F. W. Trapnall and John W. Cocke, for complainant.

Absalom Fowler, for defendant.

JOHNSON, District Judge. John Halderman filed this bill in chancery against the defendant, Peter Halderman, in which he alleges that many years ago he entered into partnership with the defendant, together with William Knox and Alexander Scott, who, being non-residents, are not made defendants, and carried on business under the name, firm, and style of Knox, Halderman & Scott, and after carrying on the partnership business for some time, it was dissolved by mutual consent of the parties concerned. And on final settlement of all the concerns of the partnership on the 1st of January, 1822, the firm was found to be indebted to John Halderman, individually, in the sum of three thousand one hundred and four dollars, one fourth of which he claims from the defendant, as one of the partners, being seven hundred and seventy-six dollars, and for that sum prays a decree against the defendant. The defendant, in his answer, admits the partnership, but denies the final settlement, as stated in the bill, and also positively denies that he is indebted to the complainant to even the smallest amount, on account of the partnership. The present complainant [Walter N. Halderman] has produced in evidence a copy of the individual account of his intestate against the firm, signed by John Halderman, William Knox, and Alexander Scott, dated at Pittsburgh, the 18th of March, 1820, without accounting for the absence of the original.

It is a rule of evidence that the original paper must be produced, and that a copy is inadmissible unless the original is lost, destroyed, or beyond the power of the party to produce it. [Riggs v. Taylor] 9 Wheat. [22 U. S.] 483; [Sebree v. Dorr] Id. 558; [Renner v. Bank of Columbia] Id. 581; [Taylor v. Riggs] 1 Pet. [26 U. S.] 596; [Winn v. Patterson] 9 Pet. [34 U. S.] 663.

But waiving this objection, upon looking into the account against the firm, it appears to be a statement of payments made by John Halderman, of debts due by the firm for which he is entitled to be credited. It does not purport to be a final settlement of the affairs of the partnership. On the contrary, it is manifest that it was not; because, in the memorandum on the account, it is expressed that "the accounts as stated in the books are to stand, and each partner to be charged with a fair proportion of all losses and expenses which may accrue in settling up the business. Each partner is to keep a correct account of all receipts and expenditures, returns of which are to be forwarded to William K. Rule, at St. Louis, quarterly, in order to enable him to square the accounts, without the trouble and expense of again coming to Maysville or Pittsburgh." From this memorandum it clearly

appears that a final settlement was not then made, and that many things were to be done before one could be made. There was no final adjustment—no balance struck. Until there is a final settlement and adjustment of all accounts between partners, and a balance struck, one partner is not permitted to sue the others, either at law or in equity, for money paid by him on account of the partnership concern. Where money is due from one partner to another, by simple contract on the partnership account, payment, except in a few special cases, can only be enforced by application to a court of equity on a bill for an account and a dissolution of the partnership. Colly. Partn. 144. When upon a dissolution of a partnership, all the accounts have been adjusted and a balance struck, an action at law will lie for such balance. 1 Story, Eq. § 664, note 1; Colly. Partn. 151, 153; 1 Hall, 180. Whether a bill in chancery will also lie in such a case, need not now be determined, as the evidence shows that this is not a case of that description. My impression is, that the remedy at law would be ample and complete, and that unless a discovery is asked and obtained, or some special reason exists for invoking the aid of a court of equity, a chancellor ought not to entertain such a bill.

The bill in the present case not being filed with a view to obtain a general account and settlement of all the partnership transactions, but for the payment of a balance claimed to be due to one partner from another, and the case being unsustained by proof of any final settlement among the partners, must be dismissed at the cost of the complainant. Decreed accordingly.

[See Case No. 5,908.]

---

## Case No. 5,910.

Ex parte HALE et al.

[5 Law Rep. 403.]

Circuit Court, D. New Hampshire.   Dec., 1842.

BANKRUPTCY — CLAIM OF SOLICITORS FOR MONEY ADVANCED FOR EXPENSES—PETITION IN INVITUM—FEES AND COSTS.

1. *Held*, that the solicitors of a voluntary bankrupt, who advanced the expenses at his request, to enable him to obtain his discharge,—a portion of which were rendered necessary in consequence of the proceedings of an objecting creditor,—were not entitled to any relief for such expenses, and for their services, against the assets of the bankrupt.

2. It seems, that a creditor, who incurs costs and expenses in prosecuting a petition against a bankrupt in invitum, to have him decreed a bankrupt, may be remunerated for the same out of the assets of the bankrupt.

This case was adjourned into this court from the district court of New Hampshire district. The petition was as follows: "Respectfully represents to the said honorable court, John P. Hale and John H. Wiggins, attorneys and counsellors of said court and partners, that they were solicitors in the case of the

said Palmer, and in such capacity have advanced and expended large sums of money at different times, since the filing of the petition of the said Palmer for the benefit of the general bankrupt law [of 1841; 5 Stat. 440], at his request, to enable him to obtain a certificate of discharge under said law; that said Palmer is indebted to the said Hale and Wiggins in a further sum for services as solicitors; that said Hale and Wiggins made said advances and expenditures and rendered the said services with the understanding that the assets of the said bankrupt's estate would be appropriated to reimburse said solicitors, and secure their fees aforesaid; that a great part of the advances and expenditures aforesaid were made necessary in consequence of the proceedings of an objecting creditor, who several times, to the great delay and hindrance of the said bankrupt, obtained from the court orders for the taking of testimony and the examination of the bankrupt; that at such taking of testimony on three several occasions, the said solicitors were present at the request of the bankrupt, and were present also at the examination of the bankrupt, at his like request; that said objecting creditor, after the taking of said testimony and examination at the time of the hearing of the petition for discharge of the said bankrupt, withdrew his objections and appearance without in any way having made provision for the payment of the costs of the bankrupt, to which he had been subjected in consequence of his proceedings, in objecting to said bankrupt's discharge, although the court had directed, and in all cases made it a rule that every objecting creditor should, at the time of filing his objections, give a bond for the payment of all costs which should be awarded against him by said court, in consequence of said objections; that said bankrupt is advanced in years and utterly worthless; that said solicitors have no knowledge of any way of securing themselves now or in time to come, unless from the assets of the bankrupt's estate. The said solicitors therefore pray for relief, and move this honorable court, that so much of the assets of the said bankrupt's estate may be allowed to them, as will compensate them for their said services, and reimburse them for the advances which they have made according to the account hereto annexed. Mem. The bankrupt has obtained his certificate of discharge." Upon this petition, it was ordered, that the question arising upon it be adjourned into this court. The case was now submitted by the petitioners without argument.

STORY, Circuit Justice. The petitioners are the solicitors of William Palmer in bankruptcy, who has been declared a voluntary bankrupt, and has been discharged by a decree of the district court from his debts provable under the bankruptcy. They ask payment to be made to them, out of the assets of the bankrupt, for all the disbursements, which they have made, and the fees, which they have earned, as solicitors of Palmer, in carrying on the proceedings for his benefit. Whether the assignee, or the creditors of the estate have had notice of this application or not, does not appear upon the record, although certainly no order ought to be made, affecting the assets of the bankrupt in this case, without a full opportunity of appearing to, and being heard upon the matter of the petition, if they should desire it, before any order should be made. But without inquiring into the circumstances, I have no difficulty in pronouncing, that the petitioners are not entitled to any such relief as they ask, against the assets of the bankrupt. In respect to that portion of the costs and expenses, which have been incurred by the opposition and objections of a creditor of the bankrupt, those costs and expenses were properly chargeable upon him, if, under all the circumstances, the district court should think he ought to pay them. If it has decided, that the creditor ought not to pay any such costs and expenses, then the solicitors are entitled to none, and must look exclusively to their client for reimbursement. If the district court has not been applied to to decree such costs and expenses against the creditor, the default is on the part of the solicitors, or their client, in not procuring such decree, or in not taking security for the costs and expenses, according to the rules of the court—Qua cunque via data est, the solicitors are not entitled to any remedy against the assets thereof.

As to the other expenses incurred by the solicitors in prosecuting the voluntary petition of the bankrupt to obtain the benefit of the bankrupt act of 1841, c. 9, I can perceive no ground, upon which payment can be decreed therefor out of the assets of the bankrupt. They were incurred for his sole personal benefit, and not for the benefit or at the instance of his creditors. He, and he only, therefore, ought to bear them. It would, or at least might, have been different, if the costs and expenses had been incurred by a creditor in prosecuting a petition against a bankrupt, in invitum, to have him decreed a bankrupt; for then and in such a case the proceedings and decree might be said to be for the benefit of all the creditors. But, here, there is no ground upon which the court can say that the costs and expenses are to be a charge upon the assets in bankruptcy. I shall direct a certificate accordingly to be sent to the district court.

The certificate was as follows: Ex parte Hale and Wiggins, Petitioners in the Bankruptcy of William Palmer. It is ordered by the court, that the following certificate be sent to the district court, upon the question adjourned into this court, and in answer thereto, namely: It is the opinion of the circuit court, that the petitioners have no

right to have the costs, fee, expenses, and disbursements, stated in their petition, paid out of the assets of the said William Palmer, the bankrupt; but that the same are a personal charge, to be borne by him exclusively.

## Case No. 5,911.

### In re HALE.

[18 N. B. R. 335.][1]

District Court, S. D. New York. Oct. 10, 1878.

BANKRUPTCY — PROVISIONAL WARRANT — ARREST — VOLUNTARY PROCEEDING.

1. The bankrupt was adjudicated upon his own petition. He remained in possession of his assets and disposed of a portion of them, and expressed an intention of going to Europe for the purpose of adjusting his foreign accounts, which constituted a considerable portion of his assets. He had expressed an intention of offering a composition, but had presented no application therefor to the court, and declared that his affairs were so confused, especially his foreign accounts, that he was unable to do so. *Held*, that the case was a proper one for a provisional warrant.

2. The bankrupt law [of 1867 (14 Stat. 517)] does not authorize the arrest of the bankrupt in a voluntary proceeding.

[In bankruptcy. In the matter of John M. Hale.]

Edward T. Bartlett, for petitioner.

A. Blumenstiel, for bankrupt.

CHOATE, District Judge. This is an application for a provisional warrant and for a warrant to arrest the bankrupt upon the petition of one of his principal creditors. The bankrupt was adjudicated August 27th, 1878, on his own petition. The warrant as first issued fixed October 10th as the time for the first meeting of creditors. The time was afterwards altered by procurement of the bankrupt's attorney to the 6th of November. The bankrupt is still in possession of his assets, and since the filing of the petition he has disposed of some part of his goods in store, amounting to between three hundred and four hundred dollars. He has expressed an intention of offering a composition, but has not presented any application therefor to the court. He has also expressed an intention of going to Europe for the purpose of adjusting his accounts with his foreign debtors, which constitute a considerable part of his assets. He declares his inability at present to make a proposition for a composition because his affairs, especially these foreign accounts, are so confused, and their availability for the purpose of a composition is so uncertain.

1. As to the provisional warrant, I think the creditor is entitled to have it issue upon the facts of this case, unless he shall accept in lieu thereof an order for the joint custody of the assets by the bankrupt and a custodian named by the petitioners, and for a full inventory to be filed with the clerk, and for

1 [Reprinted by permission.]

the deposit of all moneys in bank subject to the order of the court. To this the bankrupt makes no objection if the case is held to be a proper one for a warrant, and this arrangement affords a practical security to the creditors without the expenses incident to the issue of a provisional warrant. The violation by the bankrupt of the injunction against disposing of his property, though apparently no fraud was intended, and the delay in the holding of the first meeting and the indefinite postponement of the proposed application for a composition, render it a proper case for taking from the bankrupt the exclusive custody of his assets.

2. The motion for a warrant of arrest must be denied, on the ground that the bankrupt law does not authorize the arrest of the bankrupt in a case of voluntary bankruptcy, and the holding of him in custody or under bail during the pending of the bankruptcy proceedings. The only power to arrest the bankrupt expressly conferred upon the court by the statute is that given in section 5024, which, in certain cases, authorizes the arrest of the alleged bankrupt in an involuntary case, and the holding of him in custody or under bail until the decision of the court upon the petition of the creditors, that is, until the further order of the court. It is at least very doubtful whether, under this section, the power of arrest in an involuntary case extends at all beyond the adjudication, the words "or until its further order" having been held in one case to mean only until such time before the adjudication as the court shall by its further order direct. Usher v. Pease [116 Mass. 440]. The power to arrest, therefore, in any other case, if it exist, must be implied from some other grant of power contained in the statute, or must be implied because it is essential to the proper exercise by the court of the powers granted. Such a power has been strenuously contended for by the learned counsel for the petitioner, but upon a view of all the provisions of the bankrupt law having any bearing on the question, I am satisfied that it was not intended to invest the court with this power. It is obvious that if the power exists at all, it is practically a power to hold the bankrupt in custody or under bail during the entire period that the case in bankruptcy may be pending, which may be for several years, upon proof to the satisfaction of the court that he intends to leave the jurisdiction. It can hardly be doubted that so great a power, practically reviving imprisonment for debt, and touching so seriously the personal liberty of a very large class of citizens, would, if intended to be given, have been given expressly and not left to be inferred merely from the grant of other powers, and that, if given, its exercise would have been carefully limited by the act, to prevent hardship and abuse. The express grant of the power in one case shows that the attention of the framers of the law was called to the subject,